IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALEXIS S.,                         )
                                   )
            Plaintiff,             )
                                   )
    v.                             )    1:22CV263
                                   )
KILOLO KIJAKAZI,                   )
Acting Commissioner of Social Security, )
                                   )
            Defendant.             )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Alexis S. ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Supplemental Security Income and Child Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff filed her application for Supplemental Security Income on February 15, 2018, alleging a disability onset date of July 20, 2000. (Tr. at 127, 262-70.)[1] Her application was denied initially (Tr. at 72-87), and that decision was upheld upon reconsideration (Tr. at 88-104, 154-57). Thereafter, Plaintiff requested an administrative hearing de novo before an

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #13].

Administrative Law Judge ("ALJ"). (Tr. at 168-71.) On November 15, 2019, Plaintiff appeared and testified at the subsequent hearing. Although Plaintiff was informed of her right to representation, she chose to appear and testify without the assistance of a representative. (Tr. at 108.) Following the hearing, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Act. (Tr. at 113.) However, on August 19, 2020, the Appeals Council vacated the ALJ's decision and remanded the case for a new hearing. (Tr. at 118-23.) Accordingly, on December 14, 2020, the ALJ held a telephonic hearing at which Plaintiff was represented by an attorney and during which both Plaintiff and an impartial vocational expert testified. (Tr. at 128.) In a decision dated September 29, 2021, the ALJ again concluded that Plaintiff was not disabled under the Act (Tr. at 153), and on January 26, 2022, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

2

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Notably, the claim in this case involves periods of time both before and after Plaintiff attained the age of 18. Therefore, her claim must be evaluated using two different standards. A child under the age of 18 qualifies as disabled if he or she has a medically determinable physical or mental impairment, which results in marked and

3

severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 416.906. More specifically, the ALJ must follow a three-step sequential evaluation process to consider whether the child in question (1) has engaged in substantial gainful activity; (2) has a severe impairment; and (3) has an impairment that meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(a).

At the third step, in determining whether a child's impairment is functionally equivalent to a listed impairment, the ALJ considers how the child functions in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for herself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). An impairment or combination of impairments functionally equals a listed impairment if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a), (d). A child has a "marked" limitation in a domain when the impairment "interferes seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "is 'more than moderate' but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation in a domain if her impairment interferes "very seriously" with her ability to independently initiate, sustain, or complete activities, and is the equivalent of functioning that would be expected on standardized testing with scores that are at least three standard deviations below the mean. Id. § 416.926a(e)(3).

4

For each of the six domains, the regulations provide descriptions of relevant skills and their applications for various age groups, e.g., preschool children, school-age children, and adolescents, as well as examples of limited functioning within each domain. See id. § 416.926a(g)-(l).

For claimants ages 18 and older, "[t]he Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional

5

capacity ('RFC').' Id. at 179.[2] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ first considered Plaintiff's childhood disability claim and found that Plaintiff had not engaged in "substantial gainful activity" since her February 15, 2018 application date. (Tr. at 133.) The ALJ next determined that Plaintiff suffered from a single severe impairment, "ichthyosis vulgaris scattered over her body," prior to attaining the

---

[2] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

age of 18. (Tr. at 133.)³ The ALJ found at step three that this impairment failed to meet or medically equal the adult or childhood listings for ichthyosis. (Tr. at 136.) He then conducted an analysis as to whether Plaintiff's impairment functionally equaled the severity of the listings based on the requirements of 20 C.F.R. § 416.926a, assessing Plaintiff's functioning in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for herself, and (6) health and physical well-being. (Tr. at 137-45.) The ALJ determined that, although Plaintiff had a marked limitation in health and physical well-being, she had no limitations or less than marked limitations in the other five domains. Therefore, the ALJ concluded that, prior to attaining the age of 18, Plaintiff did not have an impairment or combination of impairments that resulted in either "marked" limitations in two domains of functioning or "extreme" limitations in one domain of functioning as required to demonstrate disability under the Social Security Act.⁴

The ALJ then proceeded to consider Plaintiff's disability claim under the sequential evaluation process for adult applicants. He found at step two of the analysis that Plaintiff "continued to have the severe impairment of ichthyosis vulgaris" and had "not developed any new impairment of impairments since attaining age 18." (Tr. at 145.) He then determined

---

³ Ichthyosis refers to a group of skin disorders that lead to dry, itchy skin that appears scaly, rough, and red. The symptoms can range from mild to severe. Ichthyosis, Nat'l Inst. Arthritis & Musculoskeletal & Skin Diseases, https://www.niams.nih.gov/health-topics/ichthyosis# (last reviewed Sept. 2023).

⁴ The Court notes that the record reflects that Plaintiff's claim for disability as a child was approved in 2002 after a hearing (Tr. at 289), and Plaintiff's brief in the administrative proceeding reflects that Plaintiff's "lamellar ichthyosis is a congenital diagnosis that allowed [her] to receive child SSI benefits previously" (Tr. at 362). However, it is not clear when or why that changed or whether that prior determination was considered by the ALJ.

that Plaintiff's ichthyosis did not meet or equal a listing. (Tr. at 145.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with the following, additional limitations:

> [S]he is limited to frequent, but not continuous use of her bilateral upper extremities for pushing and pulling, and for handling activities; she must avoid concentrated exposure to extreme cold and extreme heat; and she must avoid concentrated exposure to unprotected workplace hazards such as dangerous machinery.

(Tr. at 145.) The ALJ found at step four of the analysis that Plaintiff had no past relevant work. (Tr. at 151.) However, the ALJ found at step five that, given Plaintiff's age, education, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 152-53.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 153.)

Plaintiff now raises three challenges to the ALJ's decision. First, she argues that the ALJ "erred by failing to perform a function-by-function analysis of Plaintiff's contested and relevant limitations and by failing to form a logical bridge between the evidence and his conclusions." Second, Plaintiff contends that the ALJ failed to sufficiently address whether her severe impairment of ichthyosis met or equaled Listing 8.02 under 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 8.02 (hereinafter "Listing 8.02"). Third, Plaintiff asserts that the ALJ "erred in his treatment of the medical opinion of dermatologist Dr. Aaron Wever." (Pl.'s Br. [Doc. #15] at 1.) In considering these challenges, the Court finds that the Plaintiff's contentions warrant remand with regard to the Listing analysis, and the remaining contentions can be further addressed on remand.

In undertaking the Listing analysis at step three, an ALJ is not required to explicitly identify and discuss every possible Listing, but he is compelled to provide a coherent basis for his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Where such evidence exists but is rejected without discussion, "insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." Id. In reviewing the ALJ's analysis, it is possible that even "[a] cursory explanation" at step three may prove "satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." Meador v. Colvin, No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing Smith v. Astrue, 457 F. App'x 326, 328 (4th Cir. 2011)). However, the ALJ's decision must include "a sufficient discussion of the evidence and explanation of its reasoning such that meaningful judicial review is possible." Id. If the decision does not include sufficient explanation and analysis to allow meaningful judicial review of the ALJ's listing determination, remand is appropriate. Radford, 734 F.3d at 295-96.

In this case, with respect to the analysis of the Listings, in analyzing the period prior to Plaintiff attaining age 18, the ALJ stated:

> Prior to July 20, 2018, the claimant's ichthyosis vulgaris did not meet or medically equal the criteria of either adult Listing 1.08 for ichthyosis or childhood Listing 108.02 for ichthyosis.

(Tr. at 136.) The ALJ then used the general framework for analyzing whether a combination of impairments would generally equal listing-level disability, but did not otherwise address or

9

analyze the listing itself. Similarly, in analyzing the period after Plaintiff turned 18, the ALJ stated:

> Since July 20, 2018, the claimant's ichthyosis vulgaris has not met or medically equaled the criteria of Listing 1.08 for ichthyosis.

(Tr. at 145.) Notably, the ALJ referenced the incorrect Listing, as Skin Disorders are evaluated under Listing 8.00, and Ichthyosis specifically under Listing 8.02, not Listing 1.08. More importantly, the ALJ included no additional analysis applying the relevant criteria for Listing 8.02. As Defendant correctly recounts,

> Listing 8.02 requires that a claimant present evidence of ichthyosis, with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed. See 20 C.F.R., pt. 404, subpt. P, app. 1, § 8.02. In turn, the lesions must result in a "very serious" limitation; such as, interference with the motion of a claimant's joints and that very seriously limit her use of more than one extremity; lesions on the palm of a claimant's hands that very seriously limit her ability to do fine and gross motor movements; or skin lesions on the soles of the feet, perineum, or other inguinal areas that very seriously limit her ability to ambulate. See id. at § 8.00(C)(1)(a)-(c). Flareups may qualify a claimant for purposes of the Listing where she has been unable to do any gainful activity for a continuous period of at least 12 months or where she could be expected to be unable to do any gainful activity for a continuous period of at least 12 months. See id. at § 8.00(C)(2).

(Def.'s Br. [Doc. #18] at 16.)

Here, there is evidence that Plaintiff had extensive skin lesions that persisted for a least 3 months despite treatment. Specifically, the record reflects that Plaintiff was diagnosed with Lamellar Ichthyosis,[5] and throughout the period from 2017 through 2020, she was observed

---

[5] "Lamellar ichthyosis is a condition that mainly affects the skin. . . . People with lamellar ichthyosis typically have large, dark, plate-like scales covering their skin on most of their body. Infants with lamellar ichthyosis may develop infections, an excessive loss of fluids (dehydration), and respiratory problems. Affected individuals may also have hair loss (alopecia), abnormally formed fingernails and toenails (nail dystrophy), a decreased ability to sweat (hypohidrosis), an increased sensitivity to heat, and a thickening of the skin on the palms of the hands and soles of the feet (keratoderma)." Lamellar Ichthyosis, MedlinePlus, https://medlineplus.gov/genetics/condition/lamellar-ichthyosis/#resources (last visited Sept. 28, 2023).

to have "widespread ichthyosis" (Tr. at 425), "[d]iffusely dry, cracked skin with crusting noted to entire body" (Tr. at 478), "dry skin that is sloughing" (Tr. at 509), chronic "diffuse scaly rash" (Tr. at 523), "[w]hole body scaling and skin flaking" (Tr. at 582), "completely scaly" skin (Tr. at 639), "[d]iffuse dry, cracked skin with multiple excoriated lesions diffusely" (Tr. at 660), "[c]hronic ichthy[]osis, thickened acanthotic epidermis" (Tr. at 751), "scaling of the skin and its entirety" (Tr. at 778), "[d]iffuse hyperkeratosis with adherent scales" (Tr. at 813), "severe ichthyosis" with "allergic reactions" (Tr. at 1108), and "significant scaling skin over entire body" (Tr. at 1205), including on her arms and hands (Tr. at 447).[6]

There is also evidence of very serious limitations under two of the possible scenarios set out in the Listing. First, there is evidence that lesions on the palms of her hands very seriously limit her ability to do fine and gross motor movements. 20 C.F.R., pt. 404, Subpt. P, App. 1, § 8.00(C)(1)(b). Notably, the Consultative Examination, which the ALJ accepted as persuasive (Tr. at 148), reflects "widespread ichthyosis" with "frequent infections," and specifically "widespread scaling of the skin in the upper and lower extremities as well as the trunk with hardening of the skin in the palmar surfaces of both hands." (Tr. at 772.) The Consultative Examiner, Dr. Earl Epps, noted "decreased grip strength and dexterity in her hands secondary to her ichthyosis and hardening of the skin in the palmar area of both hands." (Tr. at 772.) Dr. Epps noted that while she had normal range of motion of her shoulders,

---

Lamellar Ichthyosis is a rare genetic condition and "[f]ewer than 5,000 people in the U.S. have this disease." Lamellar Ichthyosis, Genetic & Rare Diseases Info. Ctr., https://rarediseases.info.nih.gov/diseases/10803/lamellar-ichthyosis (last visited Sept. 28, 2023).

[6] Older medical records reflect a similar condition when she was younger, and records from a suicide attempt when she was 13 reflect that she was engaging in self-injurious behaviors including cutting with "multiple cuts, scratches on her body, but due to skin disease (lamellar ichthyosis) it's barely noticeable." (Tr. at 1075.)

11

elbows, wrists, and hands, she had "decreased dexterity and grip strength in the right and left hand secondary to her ichthyosis and hyperkeratosis of the skin on the palmar surface of both hands." (Tr. at 773.) Dr. Epps estimated reduced grip strength of 4/5 in both her right hand and left hand. (Tr. at 773). With respect to her "ability to pinch, grasp and manipulate small and large objects," Dr. Epps wrote "Decreased dexterity & grip strength – Right & Left Hand." (Tr. at 774.) This is consistent with Plaintiff's testimony that she cannot form a fist, cannot open bottles or cans, and will drop things because she lacks grip strength. (Tr. at 28-29.)

Alternatively under the Listing, there is evidence that skin lesions on the soles of the feet very seriously limit her ability to ambulate. 20 C.F.R., pt. 404, Subpt. P, App. 1, § 8.00(C)(1)(c). With respect to walking and standing, Dr. Epps in the Consultative Examination noted that Plaintiff experiences "episodic swelling in her lower extremities" which "affect her mobility and ability to perform her activities of daily living." (Tr. at 772.) On examination, Dr. Epps noted "slight brawny edema in the lower extremities below the knees." (Tr. at 773.) In addition, in her testimony, Plaintiff noted that the dry, scaly skin on the soles of her feet would often crack and bleed, limiting her ability to stand and walk for extended periods. (Tr. at 26, 31, 34, 59.) Plaintiff testified that she could only stand for 30 minutes (Tr. at 43), and during a visit with her treating dermatologist, Dr. Wever, on February 5, 2020, Plaintiff reported that as a result of her ichthyosis, at times she was unable to walk (Tr. at 1292). The ALJ noted that Plaintiff was regularly assessed to have an unimpaired gait, but there is no indication that the skin condition on her feet would affect her gait or her range

12

of motion, and the ALJ did not address her ability to stand and walk in light of the condition of the skin on her feet.

The Court of Appeals for the Fourth Circuit considered a similar scenario in Radford and held that:

> The ALJ's decision regarding the applicability of Listing 1.04A is devoid of reasoning. He summarily concluded that Radford's impairment did not meet or equal a listed impairment, but he provided no explanation other than writing that he "considered, in particular," a variety of listings, including Listing 1.04A, and noting that state medical examiners had also concluded "that no listing [was] met or equaled." This insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (reversing and remanding when ALJ "failed to compare [the claimant's] symptoms to the requirements of any of the four listed impairments, except in a very summary way"). A full explanation by the ALJ is particularly important in this case because Radford's medical record includes a fair amount of evidence supportive of his claim, Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987).

Radford, 734 F.3d at 295 (internal citation to record omitted). In the present case, as in Radford, there was at least some evidence in the record to support application of Listing 8.02, but the ALJ failed to include any analysis in his decision sufficient to allow judicial review of his step three determination. In light of the Fourth Circuit's guidance in Radford, remand is necessary so that the ALJ can undertake this listing analysis in the first instance. Id. ("If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (internal quotation omitted)); see also Brown v. Colvin, 639 F. App'x at 921, 923 (4th Cir. 2016) ("We conclude that Brown's medical record is not so one-sided that one could clearly decide, without analysis, that Listing 4.04C is not implicated. Further, we do not accept Brown's and the Commissioner's invitations to review the medical record de novo to discover

13

facts to support or refute the ALJ's finding at Step Three, and it was error for the district court to do so."); Dial v. Colvin, No. 1:16CV70, 2016 WL 6997502, at * (M.D.N.C. Nov. 30, 2016) ("The ALJ's failure to address any of the physical listings in this case, including particularly Listing 4.04, is thus more than a 'technical error,' and is instead a situation where the ALJ's failure to adequately explain his reasoning precludes this Court from undertaking a 'meaningful review.'" (internal ellipsis and quotation omitted)).

Having reached this decision, the Court need not also consider Plaintiff's additional contentions. The Court does note, however, that it appears that the ALJ did not fully explain his function-by-function analysis, particularly as to Plaintiff's ability to stand for extended periods and her ability for handling or fingering in light of the limitations recognized by Dr. Epps. In addition, the ALJ rejected the opinion evidence from Plaintiff's treating dermatologist, Dr. Wever, but the most important factors when evaluating the persuasiveness of an opinion are supportability and consistency. 20 C.F.R. § 404.1520c(a), (b)(2), (c)(1)-(2). It is not clear how Dr. Wever's medical opinion was unsupported by or inconsistent with his treatment records or the Consultative Examination of Dr. Epps and the other evidence in the record. In light of the remand under Radford, these issues can be further considered and addressed by the ALJ on a full review of the record.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is REVERSED, and that the matter is REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further consideration of Plaintiff's claim. Defendant's Motion for Judgment on the Pleadings [Doc. #17] is DENIED, and Plaintiff's Motion for Judgment Reversing the

Commissioner [Doc. #14] is GRANTED to the extent set out herein. However, to the extent Plaintiff seeks an immediate award of benefits, her Motion is DENIED.

This, the 28th day of September, 2023.

                                                /s/ Joi Elizabeth Peake
                                           United States Magistrate Judge